357 So.2d 869 (1978)
DOLESE CONCRETE COMPANY, Plaintiff-Appellee,
v.
Nicholas TESSITORE, Jr., Defendant-Appellant.
No. 11834.
Court of Appeal of Louisiana, First Circuit.
March 20, 1978.
Rehearing Denied May 1, 1978.
Writs Refused June 9, 1978.
George Matthews and Ben Louis Day, Baton Rouge, of counsel, for plaintiff-appellee Dolese Concrete Co.
Erwin A. LaRose, Baton Rouge, of counsel, for defendant-appellant Nicholas Tessitore, Jr.
Before LANDRY, SARTAIN and ELLIS, JJ.
SARTAIN, Judge.
Plaintiff, Dolese Concrete Company, brought this action against defendant, Nicholas Tessitore, Jr., urging that he be found personally liable for a debt of $25,028.51 owed to it by Mid-South Metal Building Corp., of which he was a director and the treasurer. Liability is asserted on the ground that Tessitore fraudulently misrepresented certain facts to Dolese which was injured through its reliance thereon and also that Tessitore personally guaranteed payment of a certain check for $23,000.00 given by Mid-South to Dolese which was dishonored. The trial judge granted plaintiff recovery of $23,000.00 under the misrepresentation theory. We affirm.
The facts in this case are nearly identical to those found in the case of Altex Ready-Mixed Concrete Corp. v. Employers Commercial Union Insurance Co., 308 So.2d 889 (La.App. 1st Cir.), writ refused, 312 So.2d 872 (La.1975). Both cases concern the disposition of a $95,088.41 draw paid by Thomas F. Roberds, the prime contractor, to Mid-South, a sub-contractor, on August 25, 1971, for work done on a job for Georgia-Pacific Corp. near Port Hudson, Louisiana. Before releasing such a draw, Roberds required that its sub-contractors furnish evidence that payment had been made for all labor and materials used on the job. Mid-South did not have funds to pay the suppliers of its labor and materials.
Mr. Tessitore was aware of the poor financial condition of Mid-South, having been present at the regular board meetings at all of which the company's financial problems were discussed. In August of 1971, Mr.
*870 Tessitore, as treasurer of Mid-South, signed a check for $23,000.00 in favor of Dolese dated August 31, 1971.
On August 20, 1971, while Gilbert Slaughter, a sales representative for Dolese, was making a routine sales call at Mid-South, he was approached by Howard Gorby and Nicholas Tessitore. They wanted him to take the check, which Mr. Tessitore told him was post-dated, and sign a lien release form stating that Mid-South had paid Dolese. Slaughter told Tessitore that he had no authority to execute such release and that Tessitore would need to see Dolese's credit manager, Joseph C. Perot. On August 23, Tessitore took the check and release to Perot who took the check and signed the release as he had done several times in the past for Mr. Tessitore on the Georgia-Pacific job. Perot was not informed that the check was post-dated. Mr. Perot deposited the check in Dolese's account but it was returned by the bank. The check was never paid.
On August 25, 1971, Mid-South received its draw of $95,088.41 from Roberds in the form of three checks which were deposited in Mid-South's checking account at the Fidelity National Bank. On the same day the checking account was debited upon instructions from Tessitore in the following manner: $30,460.00 in payment of a promissory note which was personally endorsed by defendant, $22,500.00 to Cloverleaf Shopping Center in which defendant had at least a fifty percent interest, and $11,025.00 in payment of two notes made and executed by defendant individually. The minutes of the board meeting of August 26, 1971, also reflect a $30,000.00 payment to a Pendarvis, not further identified. These payments nearly exhausted the draw. The minutes further reflect that as of August 26 the board did not consider that Dolese had been paid despite the fact that the $23,000.00 check had been delivered.
From the above facts it can be readily seen that Tessitore knew the corporation did not intend that the check which he issued and delivered to Dolese would be paid. He was well acquainted with the fact that Dolese executed the lien release with the clear understanding that it would be paid out of the draw Mid-South was endeavoring to obtain as had been done on previous occasions. Notwithstanding this understanding, Tessitore obtained the release and then participated as an officer and board member of Mid-South in diverting these funds to satisfy obligations on which he was personally liable.
As we stated in Altex, above, "officers, directors and shareholders of a corporation can become personally liable to those who suffer loss because of fraudulent misrepresentations made by the officers, directors or shareholders on behalf of the corporation. R.S. 12:95; Texas Industries, Inc. v Dupuy & Dupuy Develop., Inc., 227 So.2d 265 (La. App. 2 Cir. 1969)."
Having determined Tessitore to be liable under a theory of fraudulent misrepresentation, we need not address the issue of personal guaranty. We must, however, determine whether the damages recoverable by plaintiff are $23,000.00, the amount of the check, or $25,028.51, the actual amount owed by Mid-South to Dolese. We believe the trial judge was correct in awarding $23,000.00. Dolese agreed to release its lien rights for this sum. Because of Tessitore's misrepresentation, it released its lien rights. Since Dolese had agreed to release these rights for $23,000.00, we feel that an award in this amount is the full extent of Tessitore's liability. Had the check been good Dolese would have still had no lien rights on the extra $2,028.51.
For the reasons assigned, the judgment is affirmed at appellant's costs.
AFFIRMED.